692 So.2d 1182 (1997)
Otis JACOBS and Kevin Hill, Plaintiffs-Appellees,
v.
LOUISIANA INDEMNITY INSURANCE COMPANY, et al., Defendants-Appellants.
No. 96-1203.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1997.
Writ Denied May 16, 1997.
Charles Addison Riddle, III, Marksville, for Otis Jacobs, et al.
David A. Johnson, Pineville, for La. Indem. Ins. Co.
Before DECUIR, AMY and SULLIVAN, JJ.
*1183 SULLIVAN, Judge.
Otis Jacobs and Kevin Hill sued Bobby Corner and Louisiana Indemnity Insurance Company (now Patterson Insurance Company) for injuries sustained in a rear-end collision. After a bench trial, the court rendered judgment against the two defendants in solido for $8,834.74 in favor of Jacobs and $7,411.38 in favor of Hill. Louisiana Indemnity appeals the trial court's finding that its policy provided coverage for Corner's vehicle on the date of the accident.

Discussion of the Record
The accident occurred on June 23, 1991, when Corner's 1986 Ford Tempo struck Jacobs' Ford Bronco from behind after Jacobs had stopped in traffic near an intersection in Marksville. Officer Chris Lachney of the Marksville Police Department cited Corner for following too closely and driving without a license. Officer Lachney also noted on the accident report that Corner's vehicle was insured through September 15, 1991 by a Louisiana Indemnity policy, number 4L4055074. After the plaintiffs filed suit, Louisiana Indemnity denied coverage, contending that Corner's policy expired on June 15, 1991, eight days before the accident.
The plaintiffs and Louisiana Indemnity filed cross motions for summary judgment on the question of insurance coverage. Louisiana Indemnity produced a copy of its policy, showing effective dates of March 15, 1991 through June 15, 1991, and the affidavit of its underwriter, Penni Davis, who stated that policy number 4L4055074 was the only policy issued to Corner and that the policy was not in effect on the date of the accident. The plaintiffs produced a copy of the accident report and affidavits from Officer Lachney and Corner. Officer Lachney stated that, during his investigation, he viewed an insurance identification card from Corner indicating coverage with Louisiana Indemnity through September 15, 1991 and that the card did not appear to be defaced or altered. Corner stated that he obtained coverage on his Ford Tempo through September 15, 1991, he made all payments on the policy in a consistent and timely manner, and at no time did he receive notice that his policy had been canceled or was expiring on June 15, 1991. After a hearing, the trial court denied both motions.
At trial, on April 22, 1996, Corner testified that he purchased his Tempo approximately two months before the accident, replacing an older truck that had originally been insured on his policy. Because he financed the newer vehicle, he was required to purchase a policy with at least six months coverage. He received the insurance card, with an expiration date of September 15, 1991, in the mail from either his insurance agency, the Marksville Insurance Exchange, or Louisiana Indemnity. He believed he was insured through that date, and he never received a notice of nonrenewal or cancellation. However, he no longer had in his possession either the insurance identification card or receipts or canceled checks showing his payments on the policy. Officer Lachney testified he had no reason to believe that the card Corner produced at the scene had been altered, defaced, or forged.
Davis, Louisiana Indemnity's underwriting manager, testified that Corner purchased a three-month policy that expired on June 15, 1991. During the policy term, Corner did substitute another vehicle for the one originally insured, but this action did not change the effective dates of coverage. She explained that a three-month policy could not be converted to a six-month policy. To obtain coverage beyond the expiration date, the insured would have to cancel the original policy and replace it with a new one or request a longer period of coverage at renewal of the original policy. Her records indicated that Corner purchased only one policy, number 4L4055074, which contained an endorsement for a substituted vehicle, with the policy and the endorsement having the same expiration date.
Davis also explained that Corner's account was serviced by the Marksville Insurance Agency, which was responsible for all notices concerning renewal of the policy. She identified a renewal form addressed to Corner as the "type of renewal notice" that the agent would have sent to the insured. She stated that she had never seen the insurance card in Corner's possession, but that it was possible to obtain such cards from agents.
*1184 At the close of evidence, the trial court noted a "gaping hole" between the coverage claimed and its verification. The court, therefore, permitted the plaintiffs to supplement the record with evidence from the Marksville Insurance Exchange showing either the payment of premiums or issuance of the insurance card. The plaintiffs then introduced the deposition of agency employee, Delores Chatelain, and the affidavit of agency co-owner, Dwight M. Riché. Chatelain stated that her agency had authority to issue temporary insurance cards, but these cards would contain only a binder number, not a policy number. Although she identified her handwriting on certain documents pertaining to Corner's policy, she had no independent recollection of Corner. She also testified that the agency would have destroyed all records in Corner's file one year after the expiration date of coverage. Riché confirmed that the agency destroyed all records of personal coverage after one year and that the agency did issue temporary insurance cards.
On June 17, 1996, the trial court ruled that the Louisiana Indemnity Policy was in effect on the date of the accident, for the following reasons:
At the time of the accident, Mr. [Corner] presented officer Chris Lachney with a Proof Of Insurance card showing the vehicle had current insurance through Louisiana Indemnity Insurance, purchased through Marksville Insurance Exchange. Defendant contends that the insurance had expired but offered no proof of fraud in the having of the card or any explanation as to how Mr. Corner came to have this card in his possession. Despite Louisiana Indemnity's position that Marksville Insurance Exchange could not bind or issue cards, Ms. Delores Chatelain said that Marksville Insurance Exchange did, in fact, issue binders and Proof Of Insurance card[s]. There is a presumption of insurance coverage, and defendant has failed to overcome this presumption.
Louisiana Indemnity appeals, assigning as error the findings that there is a presumption of insurance coverage and that the policy was in effect on the date of the accident.

Analysis
The trial court concluded that Corner's possession of an insurance identification card created a presumption of coverage that the insurance company failed to rebut. We agree with Louisiana Indemnity that this was error. In Adamson v. State Farm Mut. Auto. Ins. Co., 95-2450, p. 10 (La.App. 1 Cir. 6/28/96); 676 So.2d 227, 233, the court discussed the significance of such identification cards:
Plaintiffs argue that the transmittal by State Farm of the identification cards was proof that the policy had been renewed. We disagree.
LSA-R.S. 32:863.1 mandates that all operators of vehicles have with them in the vehicle evidence that the vehicle is insured. One type of evidence is an identification card issued by the insurer, noting the name and address of the insurer, the policy number, a description of the insured vehicle, and the effective and expiration dates of the policy. LSA-R.S. 32:863.1 A(1)(a). As pointed out by State Farm in brief, identification cards are provided to the insured to fulfill his obligation under LSA-R.S. 32:863.1, not to acknowledge actual renewal of the policy. Generally, identification cards are issued in anticipation of renewal and are sent to the insured with the renewal notice or sometime shortly after the notice is sent.

(Emphasis added.)
Although the insured in Adamson possessed a valid insurance identification card, the parties stipulated that the insured did not pay his premium within the time specified in a renewal notice sent by the insurer. These facts supported summary judgment in favor of the insurer that the policy had lapsed. In Smith v. American Lloyds Ins. Co., 95-235 (La.App. 4 Cir. 10/26/95); 663 So.2d 531, writ denied, 95-2826 (La.2/2/96); 666 So.2d 1085, a question of coverage arose when an endorsement for a specific vehicle in a fleet policy could not be located after LIGA had taken over the claim. The insured's possession of an identification card for that vehicle, combined with an adjuster's testimony that the property damage claim had been paid and settlement checks been drafted before *1185 LIGA confiscated the files, was sufficient to prove coverage, even though the endorsement was never found.
As these cases illustrate, an insurance identification card is only one factor considered in the determination of coverage. In some instances, evidence that the insured possessed such a card at the scene of the accident may be sufficient to prove coverage. See Zurich-American Ins. Group v. Ellison, 640 So.2d 262 (La.App. 4 Cir.1993), where the only evidence of coverage was a notation on the police report, admitted by stipulation, that a vehicle was insured by a certain company, with a policy number and expiration date. In the instant case, however, the police report indicating coverage was not the only evidence on this issue.
In addition to the police report, the plaintiffs introduced Corner's testimony that he purchased six months of coverage when he insured the Tempo under his existing policy. However, this testimony is contradicted by Louisiana Indemnity's records and is not corroborated by other evidence. The endorsement substituting the Tempo for the older vehicle shows the addition of comprehensive and collision coverage, as expected with a financed vehicle, but contains the same expiration date as the original policy. The additional premium paid for the collision and comprehensive coverage reflects a credit for the time that had elapsed before the new vehicle was added, rather than a surcharge for coverage beyond the expiration date. Corner's Tempo was heavily damaged in the accident, but the plaintiffs failed to adduce any testimony or other evidence that Louisiana Indemnity paid this property damage claim under the collision coverage of its policy. Finally, the plaintiffs were unable to corroborate Corner's testimony that he paid premiums through September 15, 1991, upon the insurer's production of documents showing that the policy expired on June 15, 1991.
The plaintiff has the burden of proving each element of his case, and competent evidence of a claim under an insurance contract is the insurance contract itself. Brown v. Trinity Ins. Co., 480 So.2d 919 (La.App. 2 Cir.1985). The insurance company produced its policy and endorsement showing that coverage had ended before the accident. Corner's possession of the insurance card and his uncorroborated testimony are insufficient to prove any variation in the terms of the insurance contract.
For the first time on appeal, plaintiffs argue that Corner's three-month policy was automatically renewed because Louisiana Indemnity failed to send Corner a renewal notice pursuant to La.R.S. 22:636.1(E). That statute provides in part:
E. (1) No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This Subsection shall not apply:
(a) If the insurer has manifested its willingness to renew.

(Emphasis added.)
In Ray v. Associated Indem. Corp., 373 So.2d 166, 168 (La.1979) the supreme court explained this statute as follows:
Section E requires an insurer to renew a policy unless it mails or delivers timely notice of its intention not to renew. However, the insurer is not required to renew the policy or to give notice of its intention not to renew if it "has manifested its willingness to renew." Once the company demonstrates its willingness to renew, § E no longer applies. This result obtains because the insurance company, by stating its willingness to renew the policy, gives the insured the option of continuing or terminating coverage. If the insured is silent or indicates his aversion to continued coverage, the insurance company is no longer obligated to renew the policy. For this reason, it is clear that the insurer's willingness to renew the policy is ineffective unless it is communicated to the insured, because he will be aware that the choice of continuing coverage rests solely with him only if he knows that the company is willing to renew the policy. The lower courts were incorrect to focus on the insurer's willingness to renew the policy, since the pertinent inquiry was whether this intention had been communicated to [the insured.]
*1186 In Ray, the insurer moved for summary judgment declaring that its policy had expired upon showing it mailed a premium notice, or "its willingness to renew," to the insured. The court denied the motion, finding that the insured's adamant denial that she received such notice created a disputed issue of material fact. "[The insured] may not persuade the trier of fact that she indeed did not receive a premium notice, but the law affords her an opportunity to do so." Id. at 169. Similarly, in Cole v. Lavine, 595 So.2d 398 (La.App. 3 Cir.1992), this court found that an insurer's computer generated records showing that such a notice was mailed but without proof of receipt did not support summary judgment, where no such notice was found in the insured's effects and the insured's agent received copies of other similar notices but not the one in question.
The present case reaches us, not on summary judgment, but after full trial on the merits. Louisiana Indemnity's underwriter, Davis, testified that the Marksville Insurance Exchange serviced Corner's account. She identified a document generated by that agency and addressed to Corner as the type of renewal notice that would have been sent. Additionally, Corner's possession of an insurance card with the policy number, not a binder number, indicates that the card was issued by Louisiana Indemnity. As explained in Adamson, 676 So.2d 227, such cards are often issued in anticipation of renewal. Considering the evidence already discussed, we cannot conclude that Louisiana Indemnity failed to comply with La.R.S. 22:636.1(E).
For the above reasons, that portion of the trial court judgment casting Louisiana Indemnity Insurance Company liable to the plaintiffs, Otis Jacobs and Kevin Hill, is reversed. In all other respects the judgment is affirmed. Costs of this appeal are assessed to plaintiffs-appellees.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.